IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 05-cv-00042-WYD-OES

LUCY DAVIS, et. al.,

    Plaintiffs,

v.

THOMAS H. BAILEY, et. al.,

    Defendants.

---

**AMENDED REPLY BRIEF IN SUPPORT OF THE DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

---

*Of counsel*

Robert B. McCaw
Dawn M. Wilson
WILMER, CUTLER, PICKERING
HALE & DORR, LLP
399 Park Avenue
New York, NY 10022
Phone: 212-230-8800
Fax: 212-230-8888

Tucker Trautman
Scott P. Sinor
DORSEY &WHITNEY, LLP
370 17th Street, #4700
Denver, CO 80202-5647
Phone: 303-629-3400
Fax: 303-629-3450

Attorneys for Defendants Thomas H. Bailey, William F. McCalpin, John W. McCarter, Jr., Dennis B. Mullen, James T. Rothe, William D. Stewart, Martin H. Waldinger, Janus Capital Group, Inc., Janus Capital Management LLC, Enhanced Investment Technologies, LLC (INTECH), Bay Isle Financial LLC, Perkins, Wolf, McDonnell and Co., LLC, and Berger Financial Group, LLC

Dated: June, 23, 2005

Table of Contents

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT...................................................................................................................................2

I.    JURISDICTIONAL DEFECTS WARRANT DISMISSAL OF THE COMPLAINT ........2

      A.    Plaintiffs Have Not and Cannot Allege A Direct Injury, Therefore Counts I, II, III, and V Must Be Brought Derivatively and Should Be Dismissed for Failure to Make Demand. ...........................................................................................................2

II.   EVEN IF PLAINTIFFS HAVE STANDING TO PURSUE THIS LAWSUIT, THEIR FEDERAL CLAIMS FAIL AS A MATTER OF LAW.......................................................5

      A.    Because Plaintiffs' 36(b) Claim Bears No Relationship to Defendants' Fees, It Must Be Dismissed. .......................................................................................................5

      B.    Because No Private Right of Action Exists Under Sections 36(a) or 47(b) of the ICA, Those Claims Cannot Stand. ............................................................................7

      C.    Because Plaintiffs Have Not Alleged Personal Misconduct as Required to State a Claim Under Section 36(a), Count III Must Be Dismissed. ...................................9

      D.    Because the Other ICA Claims Fail as a Matter of Law, Plaintiffs Are Not Entitled to Relief Under Section 47(b). ...................................................................10

CONCLUSION.............................................................................................................................10

# TABLE OF AUTHORITIES

## FEDERAL CASES

Alexander v. Sandoval, 532 U.S. 275 (2001) ............................................................. 7, 8, 9

Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968) ................................................................ 7

Friedlob v. Trustees of the Alpine Mutual Fund Trust, 905 F. Supp. 843 (D. Colo. 1995) ........ 5, 9

Galfand v. Chesnutt Corp., 545 F.2d 807 (2d Cir. 1976) .............................................. 6, 10

J.I. Case Co. v. Borak, 377 U.S. 426 (1964) ..................................................................... 7

Krantz v. Prudential Inv. Fund Management LLC, 77 F. Supp. 2d 559 (D.N.J. 1999) .......... 6

Lapidus v. Hecht, 232 F.3d 679 (9th Cir. 2000) ................................................................ 3

Migdal v. Rowe-Price Fleming International, 248 F.3d 321 (4th Cir. 2001) .................... 7

Olmsted v. Pruco Life Ins. Co of New Jersey, 283 F.3d 429 (2d Cir. 2002) ................. 7, 8, 9

Prescott v. Allstate Life Ins. Co., 341 F. Supp. 2d 1023 (N.D. Ill. 2004) ....................... 9, 10

Strougo v. Bassini, 282 F.3d 162 (2d Cir. 2002) ....................................................... 4, 5, 8, 9

Tarlov v. Paine Webber Cashfund, Inc., 559 F. Supp. 429 (D.Conn. 1983) .................... 10

Univ. of Colorado Hosp. Auth. v. Denver Publ'g Co., 340 F. Supp. 2d 1142 (D. Colo. 2004) ............................................................................................................... 8

Young v. Nationwide Life Ins. Co., 2 F. Supp. 2d 914 (S.D. Tex. 1998) ......................... 10

## STATE CASES

Agostino v. Hicks, 845 A.2d 1110 (Del. Ch. 2004) ........................................................... 2

## DOCKETED CASES

Benak v. Alliance Capital Management L.P., No. Civ. A 01-5734, 2004 WL 1459249 (D.N.J. Feb. 9, 2004) ................................................................................................. 6

Chamberlain v. Aberdeen Asset Mgmt. Ltd, No. 02 CV 5870, 2005 WL 195520 (E.D.N.Y. Jan. 21, 2005) ............................................................................................... 8

In re Nuveen Fund Litig., No. 94 C 360, 1996 WL 328006 (N.D. Ill. June 11, 1996) ........ 6, 9, 10

Mutchka v. Harris, No. SACV 05-34 JVS (C.D. Cal. June 8, 2005) ............................... *passim*

Pollet v. Sears Roebuck and Co., No. 01-31309, 2002 WL 1939917 (5th Cir. July 18,
    2002) ................................................................................................................................. 8

Rohrbaugh v. Inv. Co. Inst., No. Civ. A 00-1237, 2002 WL 31100821, (D.D.C. July 2,
    2002) ................................................................................................................................. 2

Strigliabotti v. Franklin Resources, Inc., No. C 04-00883 SI, 2005 WL 645529 (N.D.
    Cal. Mar. 7, 2005) ....................................................................................................... 3, 4

## **PRELIMINARY STATEMENT**

Since briefing began in this case, which involves alleged violations of the Investment Company Act (the "ICA") and the common law for the alleged failure to participate in class action settlements, a significant and persuasive decision has issued in one of the virtually identical lawsuits brought against a different mutual fund complex. On June 8, 2005, the United States District Court for the Central District of California dismissed the complaint filed in Mutchka v. Harris on the same grounds asserted by the Defendants in this motion. See Mutchka v. Harris, No. SACV 05-34 JVS (C.D. Cal. June 8, 2005) (Order Re: Motion to Dismiss) (attached hereto as Exhibit A).[1]

The allegations in Mutchka are virtually identical to those asserted in the present action. Apart from the names of the parties, the number of funds, and the commencement of the class period, the complaints are the same. (A copy of the Mutchka complaint is attached hereto as Exhibit B). Significantly, the plaintiffs' alleged causes of action and legal theories in both cases are perfectly identical. In dismissing the Mutchka complaint, the court:

- Rejected the plaintiffs' assertion that Section 36(b) of the Investment Company Act ("ICA") could be interpreted so broadly as to encompass any breach of fiduciary duty if the supposed breach was unrelated to the investment advisor's fees. Id. at 6-7;

- Concluded that no private right of action existed under Section 36(a) of the ICA. Id. at 10;

- Held that the Section 47(b) claim – which was contingent upon a violation of another portion of the ICA – also failed since the Section 36(a) and 36(b) claims

---

[1] As discussed in the Opening Brief in Support of the Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Opening Brief"), plaintiffs' counsel in the present action filed approximately 40 virtually identical lawsuits against various mutual fund complexes in district courts across the country. Over 20 such cases have been voluntarily dismissed by the plaintiffs. Motions to dismiss are pending in other actions; Mutchka is the first such motion to be decided.

failed as a matter of law. Id. at 11; and

- Concluded that the plaintiffs' negligence and breach of fiduciary claims alleged an injury to the funds, and therefore must be pursued as a derivative action. Id. at 12-13.

Due to these deficiencies, the court dismissed the entire lawsuit with prejudice. Id. Defendants respectfully submit that this Court should do the same. Like the plaintiffs in Mutchka, plaintiffs here have asserted legal theories that do not exist, ignored the legal requirements for asserting claims that might exist, and asserted claims for which they do not have standing.

## ARGUMENT

### I. JURISDICTIONAL DEFECTS WARRANT DISMISSAL OF THE COMPLAINT

**A. Plaintiffs Have Not and Cannot Allege A Direct Injury, Therefore Counts I, II, III, and V Must Be Brought Derivatively and Should Be Dismissed for Failure to Make Demand.**

Of the plaintiffs' five causes of action, only Count IV, under Section 36(b) of the ICA, is a private right of action upon which plaintiffs can sue directly.[2] Plaintiffs attempt to transform this derivative action into a direct one by highlighting the purported differences between mutual funds and traditional corporations. Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss ("Opposition" or "Opp.") at 8-9. Under this theory, plaintiffs argue that they – not the funds themselves – suffered a direct injury as a result of the Defendants' alleged failure

---

[2] Plaintiffs confuse the issue by claiming that the Defendants have supposedly "ignored" numerous court decisions holding that a plaintiff may sue directly under the ICA. Opp. at 7. Yet Defendants have not asserted that a plaintiff may never file a direct claim under the ICA. As discussed in the Opening Brief (at 5), under both Massachusetts and Delaware law, a shareholder can file a direct claim only when he or she suffers a direct injury that is distinct from that suffered by shareholders generally and that is not derived from the corporate injury itself. See Rohrbaugh v. Inv. Co. Inst., No. Civ. A 00-1237, 2002 WL 31100821, at * 6 (D.D.C. July 2, 2002) (Massachusetts law); Agostino v. Hicks, 845 A.2d 1110, 1122 (Del. Ch. 2004) (Delaware law). Plaintiffs cannot satisfy these requirements.

2

to participate in class action settlements. The court in Mutchka rejected this exact argument:

> The Court is unpersuaded that the distinction described by [the plaintiffs] is sufficient to transmute their claims from derivative to direct. Quite simply, the funds owned the securities and the funds were able to participate in class-action settlements. The fact that Defendants allegedly failed to ensure the participation injured the funds. The [plaintiffs'] injury is identical to every other investor's in that their pro rata share of the fund allegedly would have been more valuable had Defendants participated in the settlements.

Mutchka, at 12-13.

Plaintiffs fail to demonstrate how the alleged injury – dilution of the funds' net asset value and the value of plaintiffs' shares – differs in any way from injury suffered by any other shareholder. That they are shareholders in a mutual fund instead of a corporation does not alter the fundamental fact that their claims are derivative in nature. See Lapidus v. Hecht, 232 F.3d 679, 683 (9th Cir. 2000) (dismissing an ICA claim against an investment advisor because a mutual fund shareholder "does not acquire standing to maintain a direct action when the alleged injury is inflicted only on the corporation and the only injury to the shareholder is the indirect harm which consists of the diminution in the value of his or her shares."). Likewise:

> the fact that the funds' per share net asset value . . . is calculated daily does not make the alleged injury any more direct because the injury is not realized until an [investor] sells his or her shares of the fund. In that respect, mutual funds are no different than stock ownership, where the value of shares is calculated by the marketplace with each and every trade.

Mutchka, at 13.

Plaintiffs cite Strigliabotti v. Franklin Resources, Inc., No. C 04-00883 SI, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005), for the proposition that any diminution to net asset

3

value results in a direct injury to shareholders.³ But their reliance is misplaced. In Strigliabotti, the plaintiffs alleged that the defendant-investment advisors charged higher advisory fees to the funds in which plaintiffs invested than the advisory fees charged to other funds for which they performed similar services. Id. at *1. In permitting certain state law claims to proceed directly, the court relied on the fact that "the [investors] do not allege injury to the Funds themselves." Id. at *8. Here, however, the allegations in the Complaint focus squarely upon an alleged injury to the actual funds. (See Compl. ¶¶ 23-26). As in Mutchka (at 12-13), plaintiffs allege that the funds – not the shareholders – owned the securities that are subject to the settlements (Compl. ¶ 23); ownership of the securities made the funds – not their shareholders – eligible to participate in settlements (Compl. ¶ 24); and plaintiffs, like every other shareholder in the fund, would have been affected only because the allegedly "forfeited" settlement recoveries were not included in the daily recalculation of the funds' net asset value (Compl. ¶¶ 25-26) and thus "passed on" to investors in the form of higher share values. Opp. at 9. This is a prototypical derivative, not direct, injury.⁴

Plaintiffs' citation of Strougo v. Bassini, 282 F.3d 162 (2nd Cir. 2002), is equally unpersuasive. In Strougo, there was *no* injury to the fund. Id. at 175. The plaintiffs alleged that defendants had created a coercive rights offering, which increased the value of the shares of investors that participated in the rights offering at the expense of those who chose not to participate. See id. at 174-75. The court noted that "the acts that allegedly harmed the [non-

---

³ The unreported cases cited herein are attached as Exhibit C.

⁴ Furthermore, Strigliabotti was decided under California law, which utilizes a different standard than Delaware or Massachusetts to determine whether a claim is direct or derivative. Strigliabotti, 2004 WL 645529, at * 7.

4

participating] shareholders *increased* the Fund's assets." Id. at 175 (emphasis in original). Thus, in Strougo, the plaintiffs' injuries were distinct from both the shareholders that participated in the rights offering and from the fund which benefited from the rights offering through increased assets. Here, however, plaintiffs purportedly suffered injuries that were indistinct from those suffered by shareholders generally and derived from an injury to the fund itself.

Because Counts I, II, III, and V are derivative in nature and plaintiffs have not made a demand on the funds' board of trustees – which they do not dispute is required under Delaware and Massachusetts law – the Court should dismiss the case with prejudice.[5]

## II.   EVEN IF PLAINTIFFS HAVE STANDING TO PURSUE THIS LAWSUIT, THEIR FEDERAL CLAIMS FAIL AS A MATTER OF LAW

### A.   Because Plaintiffs' 36(b) Claim Bears No Relationship to the Defendants' Fees, It Must Be Dismissed.

"Section 36(b) is clear that it provides a cause of action only for a breach of fiduciary duty *with respect to the receipt of compensation for services*." Mutchka, at 6 (emphasis in original) (internal citation omitted). Indeed, this Court has held that Section 36(b) "does not expressly authorize the SEC or a security holder to bring an action challenging a fiduciary's general performance of duties." Friedlob v. Trustees of the Alpine Mutual Fund Trust, 905 F. Supp. 843, 855 (D. Colo. 1995). Ignoring the precedent of this forum, plaintiffs argue that because the Defendants have allegedly engaged in "systematic breaches of fiduciary duty, . . . *any and all* compensation Defendants received for their services to fund shareholders is excessive." Opp. at 16-17. Plaintiffs impermissibly attempt to transform Section 36(b) into a

---

[5]   Plaintiffs strangely criticize Defendants for "not disput[ing], even in passing, the central element underlying Plaintiffs' claims, namely that the Defendants have failed to file proofs of claims in settled securities cases." Opp. at 1. Simply put, a focus on the allegations, as opposed to the merits, is what Rule 12(b)(6) requires.

5

vehicle for challenging an investment advisor's general fiduciary duties. The court in <u>Mutchka</u> rejected this very argument:

> The Court does not believe that Section 36(b) is meant to be interpreted as broadly as [the plaintiffs] posit. If it were, then a claim always would be tenable under Section 36(b) whenever an investment advisor breached *any* fiduciary duty. That, however, is not the purpose of 36(b). As many circuits have recognized, Section 36(b) is limited in scope and only is meant to provide a cause of action against investment advisors who charge *excessive* fees. To conclude that *any* fee is excessive merely because investment advisors allegedly have breached some other fiduciary duty is inconsistent with the meaning of the statute and thus is rejected by the Court.

<u>Mutchka</u>, at 6-7 (emphasis in original) (internal citations omitted).

Other courts have similarly concluded that Section 36(b) "indicates a standard of care that only runs to the terms and receipt of the compensation and not one that broadly governs an investment adviser's performance." <u>In re Nuveen Fund Litig.</u>, No. 94 C 360, 1996 WL 328006, at *12 (N.D. Ill. June 11, 1996); <u>Benak v. Alliance Capital Mgmt. L.P.</u>, No. Civ. A 01-5734, 2004 WL 1459249, at *8 (D.N.J. Feb. 9, 2004) ("The Court will not stretch the language of § 36(b) to address all improper transactions involving investment advisors simply because they received fees for them.").[6] The contrary "authority" cited by plaintiffs is unavailing. The district court cases which have expanded the scope of Section 36(b) beyond claims for excessive fees – including <u>Krantz v. Prudential Inv. Funds Mgmt. LLC</u>, 77 F. Supp. 2d 559, 565 (D.N.J. 1999), which plaintiffs prominently cite – relied on the opinion in <u>Galfand v. Chesnutt Corp.</u>, 545 F.2d 807 (2d Cir. 1976). However, <u>Galfand</u> interpreted Section 36(b) to provide a cause of action

---

[6] The inapplicability of Section 36(b) to the "nonfeasance" alleged here is particularly apparent given that the failure to obtain class action settlement proceeds would have decreased the management fee payable to the investment advisor, which is based, in part, on the amount of assets under management. Thus, if the allegations in the Complaint are true, the funds paid lower fees than they otherwise would have.

against an investment adviser for inadequate disclosure of information regarding a fee arrangement, which permitted an investment adviser to obtain a higher, unjustified fee. Migdal v. Rowe-Price Fleming Int'l, 248 F.3d 321, 329 n. 2 (4th Cir. 2001). Unlike here, "Galfand was about excessive fees which ensued from the fee arrangement," not about the investment advisor's general management of the funds. Id.

> **B. Because No Private Right of Action Exists Under Section 36(a) of the ICA, That Claim Cannot Stand.**

In arguing that a private right of action exists under Section 36(a), plaintiffs simply chose to ignore the controlling authority regarding implied private rights of action. All but one of the cases cited by plaintiffs in support of an implied private right of action under the ICA belong to an "*ancien regime*" (see Opp. at 12-13), as they were decided before the Supreme Court rendered its decision in Alexander v. Sandoval, 532 U.S. 275 (2001).[7] In Sandoval, the Supreme Court clarified the proper analysis when a court is presented with the question of whether an implied right of action exists. Id. at 286-87.

> Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress . . . The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy . . . Statutory intent on this latter point is determinative . . . Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.

Id. at 286-87 (internal citations omitted).

Since Sandoval, the Second Circuit and district courts have refused to find an implied private right of action in the ICA. See, e.g., Olmsted v. Pruco Life Ins. Co., 283 F.3d 429, 434

---

[7] Plaintiffs cite one Tenth Circuit case, Esplin v. Hirschi, 402 F.2d 94, 103 (10th Cir. 1968), that read a private right of action into the ICA. But in Esplin, the Tenth Circuit relied upon J.I. Case Co. v. Borak, 377 U.S. 426, 433 (1964); the Supreme Court has abandoned Borak's method for analyzing implied private rights of action. Sandoval, 532 U.S. at 287.

7

(2d Cir. 2002); Mutchka, at 10 (holding that no private right of action exists under Section 36(a)); Chamberlain v. Aberdeen Asset Mgmt. Ltd, No. 02 CV 5870, 2005 WL 195520, at * 4 (E.D.N.Y. Jan. 21, 2005) (same).[8]

Plaintiffs' recitation of the legislative history of Section 36(a) to support a private right of action is a red herring. Under Sandoval, a court may turn to a statute's legislative history to discern whether an implied private right of action exists "*only* if statutory text and structure have not conclusively resolved the issue." Univ. of Colorado Hosp. Auth. v. Denver Publ'g Co., 340 F. Supp. 2d 1142, 1144 (D. Colo. 2004) (emphasis added). Here, both the text and structure of Section 36(a) dispose of this question and preclude a resort to legislative history.

First, Section 36(a) does not explicitly provide a private right of action nor does it contain any "rights creating language" for private plaintiffs. See Univ. of Colorado Hosp. Auth., 340 F. Supp. 2d at 1144. Second, Section 36(a) provides an alternate source of enforcement by granting the SEC the authority to institute an action for a purported violation of an entity's fiduciary duties. Finally, because Section 36(b) of the ICA explicitly provides a private right of action, "[t]he implication, therefore, is that if Congress wished to create a private right of action for violations of Section 36(a), it could have done so, as it did for Section 36(b)." Chamberlain, 2005 WL 195520, at * 3. Because "the text of [the] statute is unambiguous" the "judicial inquiry is complete" and no implied right of action can be found to exist in Section 36(a) of the ICA. Olmsted, 283 F.3d at 435 (quoting Garcia v. United States, 469 U.S. 70 (1985)).

Plaintiffs' reliance upon Strougo – the only post-Sandoval decision they cite for the

---

[8] While the district court subsequently vacated the decision in Chamberlain due to a settlement, its analysis is instructive to the Court in the present action. See Pollet v. Sears Roebuck and Co., No. 01-31309, 2002 WL 1939917 at * 1 n. 5 (5th Cir. July 18, 2002) (noting that a decision that has been vacated due to a settlement can still be instructive).

proposition that there is an implied private right of action for Section 36(a) – is misplaced. The court in Strougo did not specifically consider whether there exists a private right of action in the ICA; indeed, the court neither cites to nor applies the analysis prescribed by Sandoval. Rather, the court considered the issue of whether the plaintiff could proceed with a direct action consistent with Maryland law. Strougo, 282 F.3d at 176-177. The Second Circuit also rendered its decision in Olmsted, 283 F.3d at 431, a week after the decision in Strougo. Applying the standard set forth in Sandoval, the court refused to read a private right of action into the ICA. Olmsted, 283 F.3d at 433. Thus, the Defendants respectfully submit that Olmsted is the Second Circuit's controlling precedent on the issue.

    **C.    Because Plaintiffs Have Not Alleged Personal Misconduct as Required to State a Claim Under Section 36(a), Count III Must Be Dismissed.**

This Court has observed that Section 36(a) provides the "SEC with a specific, narrow right of action." Friedlob, 905 F. Supp. at 855. As discussed in the Opening Brief, a cognizable claim under Section 36(a) of the ICA "must contain allegations of a breach involving *personal* misconduct." Prescott v. Allstate Life Ins. Co., 341 F. Supp. 2d 1023, 1029 (N.D. Ill. 2004) (emphasis added). In seeking to explain how their allegations fall within this very narrow band, plaintiffs assert that violations are not limited to the context of self-dealing, but rather that misconduct covered by Section 36(a) "extends to personal misconduct evidenced by misfeasance or nonfeasance in carrying out legal responsibilities as well as self-dealing and other examples of unjust enrichment." Opp. at 16 (internal citations omitted).

This argument depends on a misreading of the cited case law and a case that has been criticized by other courts. In one of the two cases plaintiffs cite for this proposition, such "misfeasance or nonfeasance" refers only to instances when the funds' directors failed to supervise the investment adviser's management of the funds to prevent *self-dealing*. In re

Nuveen Fund Litig., 1996 WL 328006, at *12 (holding that plaintiffs' claims "that the directors abdicated their responsibility to protect the shareholders' interests from the Advisor's self-dealing" states a cause of action under Section 36(a)). The only other case cited by plaintiffs, Young v. Nationwide Life Ins. Co., 2 F. Supp. 2d 914, 927 (S.D. Tex. 1998), relied on the wording of Nuveen that "nonfeasance of duty or abdication of responsibility would constitute a breach of fiduciary duty involving personal misconduct," but failed to address the Nuveen court's tying of that "nonfeasance of duty or abdication of responsibility" to a failure to prevent self-dealing. Subsequent courts have refused to follow the holding in Young. See, e.g., Prescott, 341 F. Supp. 2d at 1029.

### D. Because the Other ICA Claims Fail as a Matter of Law, Plaintiffs Are Not Entitled to Relief Under Section 47(b).

As plaintiffs concede, Section 47(b) of the ICA provides at most a remedy, not a separate cause of action. Opp. at 17. An equitable remedy under Section 47(b) can be invoked only after a plaintiff has established a violation of some other section of the ICA. Galfand, 545 F.2d at 813-14; Tarlov v. Paine Webber Cashfund, Inc., 559 F. Supp. 429, 438 (D. Conn. 1983). Because Plaintiff's other ICA claims fail as a matter of law, they may not seek equitable rescission under Section 47(b). Furthermore, the remedy of Section 47(b) may be sought only where the contract covered by the ICA was illegally entered or necessarily requires a violation of the ICA through its performance. Here, Plaintiffs have failed to make any allegations about the propriety of the investment contract or the manner into which it was entered. Plaintiffs thus fail to state a claim under Section 47(b) and Count V should be dismissed.

### CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Defendants' Opening Brief, the Complaint should be dismissed in its entirety.

Respectfully submitted this 23rd day of June, 2005.

        s/ *Tucker K. Trautman*
        Tucker K. Trautman
        Scott P. Sinor
        DORSEY & WHITNEY LLP
        370 17th Street, Suite 4700
        Denver, Colorado  80202
        Phone: 303-629-3400
        Fax:    303-629-3450
        E-mail: trautman.tucker@Dorsey.com
        E-mail: sinor.scott@Dorsey.com

*Of counsel:*

Robert McCaw
Dawn M. Wilson
WILMER CUTLER PICKERING
HALE AND DORR LLP
399 Park Avenue
New York, New York 10022
ph: +1 (212) 230-8800
fax: +1 (212) 230-8888

**ATTORNEYS FOR DEFENDANTS**

*A printed copy of this document with original signatures is maintained by Dorsey & Whitney LLP, and will be made available for inspection by other parties or the Court upon request*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 23rd day of June, 2005, a true and correct copy of the foregoing **AMENDED REPLY BRIEF IN SUPPORT OF THE DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE** was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail and mailing address:

| | |
|---|---|
| Kevin S. Hannon, Esq.<br>Hannon Law Firm, LLC<br>1641 Downing Street<br>Denver, CO 80218 | khannon@hannonlaw.com |

s/ *Tucker K. Trautman*
Tucker K. Trautman

*A printed copy of this document with original signatures is maintained by Dorsey & Whitney LLP, and will be made available for inspection by other parties or the Court upon request.*